1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOHN BERMAN,                          No.  2:13-cv-0565 TLN AC PS

12              Plaintiff,

13        v.                                ORDER AND

14    DAVID MODELL,                         FINDINGS & RECOMMENDATIONS

15              Defendant.

16

17

18        On October 9, 2013, the court held a hearing on defendant's May 28, 2013 motion to

19    dismiss for lack of personal jurisdiction and improper venue.  Plaintiff John Berman appeared in

20    pro per.  Kyle P. Montes De Oca and Russell Roeca appeared for the moving defendant, David

21    Modell.  On review of the motion, the documents filed in support and opposition, upon hearing

22    the arguments of plaintiff and counsel, and good cause appearing therefore, THE COURT FINDS

23    AS FOLLOWS:

24                          FACTUAL BACKGROUND

25    A.    The Parties

26        Plaintiff John Berman is a citizen of Nevada and also has residences in Washington State.

27    First Am. Compl. ("FAC") ¶ 2, ECF No. 7.  Under Maryland law, plaintiff is a guardian of the

28

person of his mother, Bella Berman[1], and is a beneficiary of his mother's trust. Id. ¶¶ 2, 4.

Defendant David Modell is a Maryland attorney, a citizen of Maryland, and the guardian of the property of Ms. Berman and trustee of Ms. Berman's trust. FAC ¶ 2.

B.     Allegations in First Amended Complaint

The first amended complaint describes in great detail a cordial professional relationship between the parties that has slowly deteriorated into one of distrust and acrimony.

1.     Guardianship of Ms. Berman

On December 28, 2009, plaintiff petitioned the Circuit Court of Montgomery County, Maryland ("the Maryland Court") for appointment as permanent guardian of both the person and property of Ms. Berman. FAC ¶ 3. On February 16, 2010, the Maryland Court ordered that defendant be appointed guardian of property of Ms. Berman, and on September 13, 2010, ordered that plaintiff be appointed guardian of the person of Ms. Berman. FAC ¶¶ 4-5. Both parties have continuously served and continue to serve in their capacities as guardians. On October 6, 2010 and based in part on defendant's recommendation, plaintiff authorized a care management company ("the Care Manager") to oversee the care of plaintiff's mother. FAC ¶ 9.

2.     Problems with Plaintiff's Brother

In its September 13, 2010 order, the Maryland Court ruled that "… there's evidence that shows that [plaintiff's brother ("the brother")] is concealing things and is capable of deceit, and is manipulative of his own mother . . . ." FAC ¶ 7. Following their respective appointments, plaintiff and defendant, as guardians of plaintiff's mother, permitted the brother, a legally-independent adult, to live rent-free in Ms. Berman's Maryland home provided the brother would not disrupt the functions of the live-in aide caring for plaintiff's mother, and provided the brother would not disrupt the peace of mind or physical well-being of the mother.

Over the course of time, plaintiff's brother caused many problems for Ms. Berman, resulting in a January 2011 agreement between plaintiff and defendant that the brother no longer be permitted to reside with Ms. Berman at the Maryland home. FAC ¶ 10. The decision was

_____

[1] Plaintiff's mother Bella Berman is not a party to this lawsuit.

based on the numerous disruptions of the peace and functioning of the household by the brother, including physically-threatening and verbally-abusive disruptions.  Id.

However, the brother continued to be disruptive.  On February 28, 2011, defendant stated in an email that the brother had trespassed into the Maryland home and had removed property. FAC ¶ 11.  Defendant stated that after the trespass, he had "changed the locks on the house for the protection of [plaintiff's mother] and the caregivers."  Id.  On February 3, 2012, defendant sent an email to plaintiff, which stated that the brother had made "thousands of dollars of cash withdrawals and other unauthorized charges" to a credit card in his mother's name.  Id. ¶ 12.

### 3. Problems with Care Manager

On June 15, 2012, plaintiff became aware of "false, material information" being disseminated by email from a registered nurse employed by the Care Manager regarding a phone call between plaintiff and Ms. Berman's doctor.  FAC ¶ 14.  Because the "false information in the email raised significant doubt in plaintiff's mind about the validity of all other information provided by the medical professions in charge of his mother's health care, . . . plaintiff considered the false statements a high-priority situation demanding immediate investigation."  Id. ¶ 15.  Over the course of the next two weeks, plaintiff emailed the Care Manager a number of times to gather information.  See id. ¶¶ 16-17.  Defendant ultimately got involved via email to plaintiff, stating, "This is not an emergency. . .  I cannot justify having anyone from [the Care Manager] further spend time on this email chain. . . So put an end to this today!"  Id. ¶ 17.

### 4. Ms. Berman's Visit to California

In an April 2, 2012 annual guardianship report to the Maryland Court, plaintiff stated that he was "considering bringing [his mother] to the West Coast for a visit to spend time, in particular, with her grandson."  FAC ¶ 13.

On July 6, 2012, plaintiff's Maryland attorney, Kimberly Kasberg, emailed defendant with the subject line "Travel arrangements."  FAC ¶ 19.  While plaintiff initially represented to the Maryland court that his mother would be visiting California, Ms. Kasberg's email suggested a longer-term living arrangement.  She wrote that plaintiff "anticipates rent of $1,500 to $2,000 per month and will contribute 25% of the rent for his modest share of the accommodations

(essentially one of the bedrooms). John will take the lease in his name." Id.

Plaintiff and his mother arrived in the San Francisco Bay Area on July 9 or 10, 2012. See FAC ¶ 22. On their arrival, plaintiff (for unspecified reasons) took his mother to a doctor at the Palo Alto Medical Foundation, who recommended an echocardiogram because he heard a heart murmur. Id. ¶ 23. Plaintiff also had his mother examined by a doctor with the UC Davis Medical Group, who also heard a heart murmur and recommended an echocardiogram. Id. An echocardiogram was scheduled for August 1, 2012 with UC Davis. See id. ¶ 25. Sometime in late July 2012, plaintiff took his mother to the Sutter Roseville hospital emergency room for symptoms of distress. Id.

On July 28, 2012, plaintiff sent an email to defendant stating that plaintiff had rented a 3-bedroom house for $1,500 per month in the greater Sacramento area. FAC ¶ 25. On October 26, 2012, plaintiff emailed defendant a copy of the lease on the rented house in the greater Sacramento area. Id. ¶ 30. In response, defendant emailed plaintiff, stating, ". . . I cannot work effectively with poor communication over the many many months since mom left for her 2 week vacation and then had to be medically evaluated for a 'new' condition and therefore had to stay in CA for a bit more time, which continues to this date." Id.

5.      Additional Problems with the Brother

Between July 2012 and January 2013, plaintiff's brother reported to police departments in Maryland, California, and Washington, as well as to a government social service agency and a private social service foundation in California, that Ms. Berman was kidnaped, abused, and neglected. FAC ¶ 26. The brother also left harassing, profane messages in plaintiff's voicemail. Id.

Ms. Kasberg, plaintiff's Maryland attorney, stated in communications with attorney Richard Link that "John Berman [avoided] notifying [the brother] directly about the scheduled departure for vacation. But John Berman's duty is to protect [his mother] by avoiding a scene that he fully expected would be loud, possibly violent, possibly involve the police, and inevitably distress [his mother] who had recently suffered an episode of high blood pressure consequent to one of [the brother's] verbal tirades." FAC ¶ 27.

On November 6, 2012, defendant called plaintiff's Maryland attorney and threatened to file a motion ordering plaintiff to allow plaintiff's brother to speak with Ms. Berman on a conference call with defendant as a monitor. FAC ¶ 32. Defendant threatened to assess costs of the motion to plaintiff. Id.

On November 7, 2012, Ms. Kasberg responded, stating, "It is obvious that [the brother] intended to broach his troubles with the guardianship with [the brothers' mother] and manipulate a conversation (and [the brothers' mother's] confusion) to use as evidence in some future vexatious filing … John is guardian of the person and he, and he alone, is responsible for [plaintiff's mother's] physical and emotional well-being. It is John – not you, nor me … -- who will have to deal with the fall-out should a telephone conversation between [the brother] and [the brothers' mother] go badly, as he reasonably expects it would. More importantly, it is [the mother] who will suffer for it in the very likely event that [the brother] cannot stop himself from upsetting her. Keep in mind that the last time [the brother] let loose a tirade with [the brothers' mother], shortly before the hearing in June, she had a significant bout of high blood pressure."

The pleading is silent as to whether defendant in fact filed a motion related to the brother in the Maryland Court.

6.      Filings in the Maryland Court

On August 31, 2012, defendant filed a motion with the Maryland court to resign as guardian of property for Ms. Berman. FAC ¶ 28. In the motion, defendant stated "[a]t this point in time, [plaintiff] … and myself are no longer able to effectively communicate." Id. On October 18, 2012, Ms. Kasberg filed a consent to defendant's resignation. Id. ¶ 29. Defendant's motion to resign was denied on November 5, 2012. FAC ¶ 31.

On March 20, 2013, defendant filed in the Maryland Court a "Motion to Transfer Guardianship to California," which asked the Maryland Court to order plaintiff to transfer the guardianship to California. FAC ¶ 46. Per plaintiff, defendant's motion further requested that if plaintiff did not comply with said ordered transfer, that the Maryland Court assess prospective attorneys' fees to plaintiff for defendant's hiring of an unnamed California attorney to force said guardianship transfer and said forced legal relationship under another state's laws. Defendant

5

1    ultimately withdrew this motion.

2            7.      Reimbursement for Expenses

3            On January 2, 2013, plaintiff emailed to defendant an expense form for reimbursement.

4    FAC ¶ 35.  Plaintiff sought reimbursement for plane tickets, rental payments for the house for

5    plaintiff's mother, and hotel bills for the week prior to renting the house.  See id.  On January 31,

6    2013, plaintiff sent another email attaching an itemized dental treatment plan for Ms. Berman.

7    The treatment plan specified a total cost of $11,422, and required advance payment of half that

8    amount.  FAC ¶ 39.  To date, plaintiff claims that defendant has not reimbursed him for these

9    charges.  Id. ¶ 43.

10                              PROCEDURAL HISTORY

11           Plaintiff filed this diversity action in this court on March 21, 2013 and is proceeding on a

12   first amended complaint ("FAC") filed April 8, 2013.  ECF No. 7.  Plaintiff brings five claims

13   against defendant: conversion, abuse of process, breach of fiduciary duty, civil extortion, and

14   intentional infliction of emotional distress.  FAC ¶¶ 47-56, ECF No. 7.  He seeks $35,000 in

15   actual damages, an immediate accounting, and punitive damages.  Id. at 12.

16           On May 28, 2013, defendant filed the instant motion to dismiss for lack of personal

17   jurisdiction and improper venue.  Def.'s Mot. Dismiss, ECF No. 9.  Alternatively, defendant asks

18   that the case be transferred to the Southern District of Maryland.  Id. at 17.

19           On July 5, 2013, plaintiff filed to substitute in pro se for his attorney.[2]  ECF No. 12.  This

20   matter was then referred to the undersigned by the Honorable Troy L. Nunley.  ECF 16.

21           On July 17, 2013, plaintiff filed an opposition to the motion to dismiss.  Pl.'s Opp'n to

22   Def.'s Mot. Dismiss, ECF 15.

23           On August 21, 2013, the undersigned issued an order to show cause why this action

24   should not be dismissed for lack of subject matter jurisdiction.  Order to Show Cause, ECF 18.

25   Plaintiff filed a response to this order to show cause on September 9, 2013.  Pl.'s Resp. to Order

26   to Show Cause, ECF 19.  Defendant replied on September 18, 2013.  Def.'s Reply to Pl.'s Resp.

27   _____

28   [2] Plaintiff's Yolo County, CA based attorney became ineligible to practice law as of June 14,
     2013, as noted by the California State Bar website.

6

to Order to Show Cause, ECF 21.

On October 10, 2013, defendant filed a reply brief in support of motion to dismiss for lack of personal jurisdiction and improper venue. Def.'s Reply in Supp. of Mot. Dismiss, ECF 24.

DISCUSSION

A.    Defendant's Motion to Dismiss

Defendant seeks dismissal of the FAC on two grounds: (1) under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over defendant; and (2) under Federal Rule of Civil Procedure 12(b)(3) for improper venue. Alternatively, defendant moves to transfer this suit to the Southern District of Maryland pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). Based on the analysis that follows, the undersigned finds that the Eastern District of California is not a proper venue and recommends that this action be transferred to the United States District Court for the District of Maryland. Because the undersigned recommends the transfer of this entire case on venue grounds, the court need not reach the question whether this court has personal jurisdiction over the defendant. The existence of such jurisdiction is dubious at best, but no similar problem will confront the Maryland court.[3] For the reasons now explained, venue properly lies in that district.

1.    Improper Venue

Defendant argues that this action must be dismissed for improper venue. Plaintiff failed to address this argument in his opposition to the motion to dismiss. Based on his belief that this court has personal jurisdiction over the defendant, he considers the issue of venue to be irrelevant.

Venue is "the geographic specification of the proper court or courts for the litigation of a

---

[3] "Courts have repeatedly held that a change of venue from a forum where there is a difficult question of personal jurisdiction or venue to a district where there are not such uncertainties serves the interest of justice." Multistate Legal Studies, Inc. v. Marino, 1996 U.S. Dist. LEXIS 20752, 1996 WL 786124, at *11 (C.D. Cal. Nov. 4, 1996) (collecting cases); see, e.g., DataSouth Computer Corp. v. Three Dimensional Techs., Inc., 719 F. Supp. 446, 453 (W.D.N.C. 1989) (transferring case from the district where resolution of jurisdiction issue would "require a substantial expenditure of additional resources" to district which rendered "moot the issue of personal jurisdiction"); Donnelly v. Klosters Rederi A/S, 515 F. Supp. 5, 7 (E.D. Pa. 1981) ("Substantial time, money, and effort will be required to determine this preliminary jurisdictional issue which [will be] rendered unnecessary if the action is transferred to a [district] which has in personam jurisdiction over defendant and is a forum where the action might have been brought.").

civil action." 28 U.S.C. § 1390. Venue is proper in any district where any defendant resides. 28 U.S.C. § 1391(b)(1). Additionally, in diversity suits, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Lastly, "if there is no district in which an action may otherwise be brought" the venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to [the] action." 28 U.S.C. § 1391(b)(3).

Once a defendant challenges venue as improper, the plaintiff bears the burden of showing that venue is proper in the district in which the suit was commenced. Hope v. Otis Elevator Co., 389 F.Supp.2d 1235, 1243 (E.D. Cal. 2005); see also Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir.1979). The court considers facts outside of the pleadings to determine proper venue. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). Furthermore, the court need not accept the plaintiff's pleadings as true, but must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. See American Home Assurance Co. v. TGL Container Lines, Ltd., 347 F.Supp.2d 749, 755 (N.D. Cal. 2004).

Where venue is improper, the district court may dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a). Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1212 (D. Haw. 2002). However, even where venue is proper, a case may nonetheless be transferred to any other district in which it might have been brought or to which all parties have consented "[f]or the convenience of parties and witnesses," "in the interest of justice." 28 U.S.C § 1404. In either case, the decision to transfer rests in the discretion of the court. 28 U.S.C. § 1404(b); King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992) (holding that the trial court did not abuse its discretion under 28 U.S.C. § 1406(a) when it chose to dismiss, and not transfer, the action because of improper venue).

    a.    <u>District where Defendant Resides</u>

Defendant argues first that venue does not lie in this district pursuant to 28 U.S.C. §

8

1391(b)(1) because defendant does not reside in California. Defendant's point is well-taken. See FAC ¶ 2. Because plaintiff resides in Nevada, § 1391(b)(1) does not provide a basis for venue in this district.

      b.    <u>Substantial Part of the Events or Omissions</u>

Next, venue does not lie under 28 U.S.C. § 1391(b)(2) because it appears that most, if not all, events or omissions giving rise to plaintiff's claim occurred outside the Eastern District of California. Initially, it is undisputed that the property of Ms. Berman that is the subject of this action is located in the State of Maryland: all assets, accounts, and real property contained in the revocable trust are located in Maryland, and are subject to annual accounting reporting to the Maryland court. Modell Decl. ¶¶ 6-7, ECF No. 10. Defendant's management of that property lies at the heart of plaintiff's case. There is no other property that that constitutes "the subject of the action" located in the Eastern District of California.[4]

Defendant also contends that "all [of] plaintiff's allegations relate to the Maryland guardianship of Ms. Berman, and to defendant's role as guardian of the property of Ms. Berman, as per appointment of the Maryland court." Def.'s Reply 10. An analysis of plaintiff's claims supports this argument: (1) the conversion claim alleges that defendant withheld and diverted funds from the Maryland trust; (2) the abuse of process claim alleges that defendant threatened to and then did file frivolous actions in the Maryland court; (3) the claim for breach of fiduciary duty alleges that defendant breached the duty that he owes to plaintiff as a guardian and trustee of Maryland property, a duty that arose pursuant to Maryland law; (4) the civil extortion claim alleges that defendant threatened to withhold money and then did withhold money owed to plaintiff from the Maryland trust; and (5) the claim for intentional infliction of emotional distress alleges that defendant's conduct in Maryland (i.e., filing motions in the Maryland court and

---

[4] At the hearing on the motion, plaintiff asserted that certain property does exist in this district: food and other essential items that he purchased for his mother, and that are subject to reimbursement out of the Maryland trust. Plaintiff argues that these items should be considered property for purposes of the venue analysis. Even assuming for the sake of argument that these purchases constitute California property that is part of the subject of this action, such property would be insubstantial in relation to the trust assets located in Maryland. § 1391(b)(2) requires that a *substantial* part of the property at issue be located in the district.

emailing plaintiff) caused plaintiff severe emotional distress.

The only acts that could be argued to have occurred within this district concern defendant's emails to plaintiff regarding compensation of plaintiff's expenses, the possibility of a phone call between the plaintiff's brother and his mother, and the possibility of transfer of guardianship to California.[5] But even if these communications took place in California, they cannot reasonably be considered "substantial" in light of plaintiff's allegations concerning the misappropriation of trust funds in Maryland and breach of the fiduciary duty owed by defendant to plaintiff as a guardian and trustee of the Maryland trust.

      c.      Action Can be Brought in Other District

Lastly, venue does not lie under 28 U.S.C. § 1391(b)(3) because this action may be brought in the District of Maryland, to which defendant seeks transfer. Venue is proper in that forum because defendant resides there, the property that is the subject of this dispute is located in that district, and a substantial part of the events that predicate plaintiff's claims arose there. Accordingly, the court finds that the Eastern District of California is not the proper venue for this action.

     2.     Dismissal or Transfer of Venue

        a.     28 U.S.C. § 1406(a)

Because venue is improper, the court must dismiss the action or, in the alternative, may transfer it if transfer would be in the interests of justice. 28 U.S.C. § 1406(a). Whether transfer is in the interests of justice is a decision that rests within the discretion of the court. King, 963 F.2d at 1304. The court may transfer this action to any district in which it properly could have been

---

[5] At the hearing on the motion, plaintiff asserted that because defendant's e-mails were targeted at plaintiff and because he received them in California, they constitute events in California for the purpose of venue analysis. Plaintiff, however, is not a resident of California but a resident of Nevada. Moreover, he has provided correspondence between his former attorney and defendant in which it is represented that plaintiff has numerous "out-of-area and out-of-state personal and professional obligations" and that he travels by personal plane, and is not obligated to keep defendant informed about his whereabouts. See Pl.'s Opp'n to Def.'s Mot. Dismiss, Ex. A, ECF 15 at 24-25 (email from Hal Wright to David Monell, dated 2/19/13) . It is entirely unclear how the sending or receipt of e-mails that were sent from Maryland to a frequent traveler can be reasonably viewed as events that took place in California.

1    brought.  28 U.S.C. § 1406(a).

2         Here, plaintiff could have brought this action in the District of Maryland.  Thus, the court

3    recommends that the action be transferred in the interests of justice to the United States District

4    Court of Maryland.  The transfer of the action as opposed to dismissal will spare plaintiff the

5    delay and expense involved in re-filing the action and re-serving the defendant.  Accordingly, it is

6    recommended that this action be transferred to the District of Maryland.

7              b.    28 U.S.C. § 1404(a) - Transfer for Convenience

8         Alternatively, defendant seeks transfer for convenience to the United States District Court

9    of Maryland.[6]  Even assuming venue is proper in this district, defendant argues that the action

10   should be transferred per the discretion of the trial judge for the convenience of the parties and the

11   witnesses in this case and in the "interest of justice."  28 U.S.C. § 1404(a); see also Stewart Org.,

12   Inc., Ricoh Corp., 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the

13   district court to adjudicate motions for transfer according to an 'individualized, case-by-case

14   consideration of convenience and fairness.'") (citing Van Dusen v. Barrack, 376 U.S. 612, 622

15   (1964)).  In addition to considering the convenience of the parties, the convenience of the

16   witnesses, and the interests of justice, the district court may consider several factors in evaluating

17   such a discretionary transfer, including:

18              (1) the location where the relevant agreements were negotiated and
                executed, (2) the state that is most familiar with the governing law,
19              (3) the plaintiff's choice of forum, (4) the respective parties'
                contacts with the forum, (5) the contacts relating to the plaintiff's
20              cause of action in the chosen forum, (6) the differences in the costs
                of litigation in the two forums, (7) the availability of compulsory
21              process to compel attendance of unwilling non-party witnesses, and
                (8) the ease of access to sources of proof.
22

23   Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).  The party seeking a

24   transfer pursuant to Section 1404(a) bears the burden to justify the transfer on the basis of

25   convenience and the interests of justice.  See Commodity Futures Trading Comm'n v. Savage,

26   611 F.2d 270, 279 (9th Cir. 1979).

27   _____

28   [6] Defendant improperly names the "Southern District of Maryland," while Maryland has a single
     judicial district.  Defendant may be referring to the southern division of that district.

11

1    Turning first to the convenience of the parties and witnesses and location of evidence, the

2    court finds that this consideration favors the transfer of this action to the District of Maryland.

3    While plaintiff and his mother are currently located in California, as do her current health care

4    providers, the only defendant and numerous other witnesses reside in Maryland.  Defendant

5    contends that the majority of witnesses to the facts alleged in plaintiff's First Amended Complaint

6    are located in Maryland, including the attorneys involved in the guardianship proceeding;

7    plaintiff's attorney, Kimberly Kasberg; and plaintiff's brother's attorneys.  Additionally, persons

8    with knowledge of defendant's alleged misappropriation of funds, alleged misconduct, and

9    alleged "constant haranguing and threatening" of plaintiff are also located in Maryland, as are

10   Ms. Berman's numerous former health care providers and her former live-in aide.  If the parties

11   intend to take the depositions of and call the above mentioned individuals as witnesses at trial,

12   then transfer of this action to a Maryland court would ease logistical and cost burdens with

13   respect to discovery and trial.

14       For the same reasons, the availability of compulsory process to compel attendance of

15   unwilling non-party witnesses weighs in favor of transfer: while there are likely witnesses in both

16   forums, there are likely more witnesses who might have to be compelled and who are located in

17   Maryland.  In addition, evidence such as financial records related to defendant's management of

18   Ms. Berman's property and trust is located in Maryland, as are all files and records relating to the

19   guardianship proceeding.

20       Next, as previously discussed, nearly all of the alleged events that give rise to plaintiff's

21   claims occurred in the State of Maryland.  The appointment of guardians and establishment of

22   trust at issue occurred in Maryland and was supervised by the Maryland court and carried out by

23   attorneys who are licensed by the State of Maryland.  A federal district court sitting in Maryland

24   will likely have far greater familiarity with the relevant legal background to the events in issue,

25   and with the substantive law governing most of plaintiff's claims.[7]  Furthermore, defendant points

26

27   [7] All of plaintiff's claims are state common law claims.  Given that the allegations involve acts of
     financial misconduct committed in Maryland, and /or breaches of duties imposed by Maryland
28   law, Maryland law would appear to govern.

out that transfer to Maryland would avoid inconsistent treatment of parties vis-a-vis the ongoing guardianship proceedings in Maryland. Maryland has a strong and ongoing connection to the matters at issue, as the Maryland court has appointed plaintiff as guardian of the person and defendant as guardian of the property of Ms. Berman, and the state retains an interest in the litigation of any claims between the two guardians relating to the guardianship. For all these reasons, a federal court familiar with Maryland law will be in a better position that this court to resolve the merits of the dispute.

Finally, this case will proceed faster in the District of Maryland because that court carries fewer cases than the Eastern District of California, making litigation easier and less expensive. As has been extensively documented, the Eastern District of California is more congested than practically any other court in the country, including the District of Maryland. As of June 2013, the Eastern District of California had 8,096 cases pending, with six district judges, while the District of Maryland had 4,291 cases pending with ten district judges; this results in 1,349 cases per judge in the Eastern District of California and 429 in Maryland. Accordingly, the median time from filing to trial in civil cases is over fifty months in the Eastern District of California and about thirty three months in the District of Maryland. See Federal Court Management Statistics, District Courts, June 2013, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2013.aspx; see also Meyer Mfg. Co. v. Telebrands Corp., CIV. S-11-3153 LKK, 2012 WL 1189765 (E.D. Cal. Apr. 9, 2012) (citing the caseload tables for evidence that California's Eastern District is more heavily burdened than that of the District of New Jersey, and weighing this factor in favor of transferring the action to the District of New Jersey).

The only factor that potentially militates against the transfer is plaintiff's choice of forum. Although this court recognizes that substantial weight should ordinarily be given to a plaintiff's desired forum, see Securities Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985), this factor is especially important when the plaintiff resides in the desired forum. That is not the case here, as plaintiff is a resident of Nevada. In addition, plaintiff's choice of forum should be largely discounted in this case because practically none of the events that give rise to

plaintiff's claims occurred in this forum.  See In re E. Dist. Repetitive Stress Injury Litig., 850 F. Supp. 188, 194 (E.D.N.Y. 1994) (recognizing that a "plaintiff's choice of forum is generally entitled to 'great weight,' but that "when a plaintiff's chosen forum has no connection to the events which gave rise to the claim for relief, plaintiff's choice of forum is a less weighty consideration") (citations and quotation marks omitted).

For all these reasons, transfer to the District of Maryland would be appropriate for convenience and in the interests of justice even if venue were not improper here.  The undersigned accordingly recommends transfer on the alternative grounds of 28 U.S.C. § 1404(a).

B.   Order to Show Cause

In this diversity action, plaintiff's original and amended complaints seek damages in the amount of $35,000 and "punitive damages in an amount appropriate to punish the defendant and deter others from engaging in similar misconduct."  Because it appears from the face of the pleadings that the amount in controversy falls short of the statutory requirement, the undersigned issued an order to show cause why this action should not be dismissed for lack of subject matter jurisdiction.  See 28 U.S.C. § 1332(a)(2) (Federal courts are conferred with original jurisdiction over "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . citizens of a State and citizens or subjects of a foreign state."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); see also Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002) ("[A] court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action . . . .").

In his September 9, 2013 response to the order to show cause, plaintiff requested leave to amend his complaint to include facts that would support additional actual damages for breach of fiduciary duty.  In addition, plaintiff contends that punitive damages in the amount of over $40,000 based on "a highly-plausible 1.15 multiplier of actual damages" must be considered. Generally, punitive damages, if asserted in good faith, can be included in computing the necessary jurisdictional amount.  Davenport v. Mut. Ben. Health & Acc. Ass'n, 325 F.2d 785, 787 (9th Cir. 1963) (citing Young v. Main, 72 F.2d 646 (8th Cir. 1934)).  However, if under the

14

applicable state law it would be legally impossible to recover actual and exemplary damages, the addition of such exemplary damages to the claim will not create a sufficient good faith claim.  Id.; Trahan v. U.S. Bank Nat. Ass'n, 379 F. App'x 628, 629 (9th Cir. 2010) (citing Davenport, 325 F.2d at 787) ("A district court need not consider punitive damages in determining the amount in controversy when such damages are unavailable as a matter of state law.").  Plaintiff has failed to brief Maryland law governing the award of punitive damages.

In light of the recommendation that this case be transferred to the District of Maryland, the court finds it unnecessary to determine whether petitioner should be granted leave to amend the complaint.  The order to show cause will be discharged without a ruling on subject matter jurisdiction, as plaintiff has provided a plausible basis for alleging that the amount in controversy meets the jurisdictional threshold but the question of amendment is not properly before this court. A request to amend may be presented to the United States District Court for the District of Maryland upon transfer.

CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that the Order to Show Cause (ECF No. 18) is discharged; and

IT IS HEREBY RECOMMENDED that:

1.  Defendant's May 28, 2013 motion to dismiss (ECF No. 9) be granted in part; and

2.  This action be transferred to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a) and § 1406(a).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised

////

////

that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 15, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb_ew;berm0565.mtd